**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARPENTER TECHNOLOGY CORP.,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | **NO. 08-2907** |
| | : | |
| **ALLEGHENY TECHNOLOGIES** | : | |
| **INC., et al.,** | : | |
| Defendants | | |

**M E M O R A N D U M**

**Stengel, J.**                                                                                             **August  18, 2011**

Allegheny Technologies Inc. and ATI Properties, Inc. have filed a motion for partial summary judgment on the Lanham Act unfair competition claim asserted by Carpenter Technology Corporation.  I will grant the motion for partial summary judgment because Carpenter has failed to satisfy multiple elements for a claim of false advertising under the Lanham Act.

**I.     BACKGROUND**

Carpenter is a manufacturer and distributor of specialty alloy ingots for the energy, defense, automotive, and medical industries.  Second Am. Compl. ¶ 4; Carpenter's Resp. Defs' Statement of Material Facts ¶ 4 (Carpenter S.M.F.).  ATI also produces and sells specialty alloys for the aerospace and energy industries.  Both parties manufacture and sell ingots composed of nickel based superalloys, including the 706 Alloy and the 718 Alloy.  Carpenter S.M.F. ¶¶ 2-3, 5-6.

1

ATI's motion for partial summary judgment involves two ATI patents: the '564 patent, issued on July 9, 2002, and the '858 patent, issued on April 13, 2004.[1] ATI Appx. Ex. 1 '564 Patent; ATI Appx. Ex. 2 '858 Patent; Second Am. Compl. ¶¶ 8-9. The patents claim large-diameter ingots of nickel based superalloys. These ingots are manufactured into rotating parts for power generation, and are used primarily in land-based turbines. ATI Appx. Ex. 1 '564 Patent; ATI Appx. Ex. 2 '858 Patent.

On November 13 and 14, 2003, ATI sent letters to Carpenter, General Electric Power Systems, Aubert & Duval, S.A., and Special Metals Corporation. Appx. to ATI Mem. In Supp. Of Mot. for Partial Summ. J. (ATI. Appx.), Exs. 48, 49, 50, and 51. GE and Aubert were customers or potential customers of Carpenter and ATI; Special Metals was a competitor. Reber Dep., 75:5-8, July 27, 2010, ATI Ex. 34; Christiansen Dep., 109:23-110:17, Oct. 6, 2009, ATI Ex. 52. The letters ATI sent to Carpenter, Special Metals, and Aubert stated:

> It has come to our attention that companies involved in the manufacture of ingots, forgings, or gas turbines may be considering either the manufacture, use, or sale of products using large diameter triple-melted 718 nickel alloy ingots greater than 30 inches in diameter, including up to 36 inches in diameter.
>
> You should be aware that Allegheny Technologies Incorporated owns U.S. Patent 6,416,564 and related pending patent applications covering the manufacture, use, and sale of such large diameter nickel-base alloy ingots. ATI Allvac developed the patented invention, and the patents are assigned to ATI Properties, Inc.; [sic] both are Allegheny Technologies companies.
>
> Enclosed is a copy of U.S. Patent 6,416,564 for your ready reference.

---

[1] Because the history of the patents has been examined at length in this Court's memorandum denying Carpenter's motion for summary judgment based on obviousness, the patents are cited herein only as necessary to the Lanham Act claim. See Memorandum, Carpenter Tech. Corp. v. Allegheny Tech., 08-2907 (E.D. Pa. filed Aug. 2, 2011).

> Allegheny Technologies is proud of its technical achievements and values its intellectual property rights. Our policy is to respect the valid patent rights of others, as we expect others to respect our patent rights.
> . . .

ATI Appx. Exs 48, 50, 51. The letter to GE is similar in form to the above letter but references prior discussions between GE and ATI in which GE questioned the patent's validity. ATI Appx. Ex. 49.

After the '564 patent was issued to ATI on July 9, 2002, Carpenter entered into indemnification agreements with its customers. ATI's Statement of Material Facts ¶ 11 (ATI S.M.F.). After receiving ATI's November 13, 2003 letter, Carpenter continued to manufacture and sell large-diameter 718 ingots—the subject matter covered by the patents. Carpenter S.M.F. ¶ 14. Carpenter's indemnification agreements with its customers contemplated probable patent infringement litigation by ATI. ATI Appx. Ex. 58. Carpenter agreed to indemnify the product purchasers, i.e. forgers of the ingots such as Aubert, for any future patent infringement action brought by ATI against the forgers. Reber Dep. 18:6-24; Widge Dep., 86:20-87:10, Sept. 3, 2009, ATI Ex. 6. Separate arrangements also called for GE to indemnify Carpenter for specified ingots. Widge Dep. 86:20-87:10. Following the issuance of ATI's letters on November 13 and 14, 2003, GE decided not to offer indemnification on ingots greater than 30 inches in diameter—the subject matter covered by the patents. Id. Despite the absence of indemnity agreements, Carpenter sold ingots to GE in 2004 and 2005. Production ceased and no more sales occurred beginning in 2006. Christiansen Dep. 45:8-47:24; ATI Appx. Ex. 30, Supplemental Expert Report of Beutel at Supplemental Attachment 5b; ATI S.M.F. ¶ 19.

3

**II.    STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In moving for summary judgment, a party must support its position that material facts are not in dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only) . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c).

The court must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court must decide whether a reasonable jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. Production by the non-moving party of more than a "mere scintilla" of evidence demonstrating a genuine issue of material fact means the court may not credit the moving party's version of events against the opponent, even if the quantity of the moving party's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**III. DISCUSSION**

Carpenter is bringing its claim of unfair competition under the Lanham Act.[2] Section 43(a) of the Act creates a cause of action for a false or misleading description or representation of a product. The relevant language states that:

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1)(B).

ATI is entitled to summary judgment if Carpenter is unable to come forward with evidence as to the elements of a false advertising claim. ATI must also show there is no genuine issue of fact and that it is entitled to judgment as a matter of law. The elements of a Lanham Act false advertising claim are: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods travel in interstate commerce; (5) there is a likelihood of harm to the plaintiff in terms of declining sales or loss of goodwill; and (6) there was objective and subjective bad faith on the part of the patent holder.[3] Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer, 19 F.3d 125, 129 (3d Cir. 1994); see also GlaxoSmithKline

---

[2] 15 U.S.C § 1125 (2010).

[3] That the advertised goods traveled in interstate commerce is not contested by either party.

Consumer Healthcare, L.P. v. Merix Pharm. Corp., 197 Fed.Appx. 120, 123 (3d Cir. 2006) (noting that in listing the final two elements, the connector "and" is used to mean that satisfaction of all elements is required); Allen v. Howmedica Leibinger, Inc., 197 F. Supp. 2d 101, 108 (D. Del. 2002); Lawman Armor Corp. v. Master Lock Co., No. 02-6605, 2004 U.S. Dist. LEXIS 2905, *9 (E.D. Pa. Feb. 27, 2004) (outlining the unfair competition elements for a Lanham Act claim and subsequently noting that "[e]ach of the above listed elements are essential to the claim").[4]

### A.   Patentee Made False or Misleading Statements

If a plaintiff proves that a claim is literally false, the first element of false advertising would be satisfied without considering whether the consuming public was deceived. Should a plaintiff fail to show that a statement is literally false, it must prove that the message conveyed by the claim is deceptive or misleading to the public. U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir. 1990).

Carpenter argues that ATI had no valid patent rights at the time the letters were sent and, accordingly, ATI's statements that it had valid rights to the '564 patent were literally false. Second Amd. Compl. ¶ 18; Pl.'s Mem. Opp'n. Defs'. Mot. Summ. J. at 9; id. at 17 (claiming that ATI knew "the process claimed in the '564 Patent was a logical

---

[4] In Interfood Holding, B.V. v. Rice, 607 F. Supp. 2d 1059, 1062 (E.D. Mo. 2009), the court observed that plaintiff's response considered only one of the elements of false advertising and ruled that failure to address the other elements mandated a grant of summary judgment in favor of the defendant.

and obvious extension of processes ATI was already using. . .").[5] That is, Carpenter claims ATI's patent was invalid, that ATI well knew its patent was invalid, and that informing anyone that it held a patent was simply a false statement. Carpenter's position is a curious one, in light of the fact that ATI owned the '564 patent.

A patent is presumed valid until a court rules otherwise. See 35 U.S.C. § 282 (2010); IMCS, Inc. v. D.P. Technology Corp., 264 F. Supp. 2d 193, 197 (E.D. Pa. 2003). In IMCS, a specific software program developed by the plaintiff was protected by a patent, and advertisements put out by the plaintiff noted as much. Id. After the plaintiffs sued for patent infringement, the defendants claimed the patent was invalid and that plaintiff's advertising constituted false representations of their product under the Lanham Act. Id. In dismissing the false advertising claim, the court observed that filing a suit to enforce a patent does not constitute unfair competition even if the patent is later found to be invalid. Id. at 198. Similarly, in Allen, the plaintiff contended that defendants made false statements when representing that their technology was protected by a patent—a duplicate of which was contained in a German patent which had been revoked by the German Patent Office prior to the allegedly false statements. Allen, 197 F. Supp. 2d. at 108. The court concluded that defendants' statements were literally true because the representation that the technology was patent-protected was made before the patent was declared invalid in Germany. Id. at 108-09 (noting that patent law "authorize[s]

---

[5] Carpenter has filed separate motions for summary judgment seeking invalidation of the patents as obvious and excluded under the on-sale bar.

patentees to mark their patented articles and make marking[s] or specific notice to the accused infringer a prerequisite to the recovery of damages").

Patents receive a presumption of validity under the law, and Carpenter's claim that ATI had invalid patent rights is insufficient to rebut this presumption.

### B. The Deception Was Material

Under the second element, a Lanham Act plaintiff can meet its burden by showing that a defendant's statement, while not literally false, still resulted in actual deception or a tendency to deceive a substantial portion of the intended audience. The evidence points to neither GE nor Aubert having been deceived by the ATI letters. In GE's opinion, ATI's patents should not have been issued and GE proceeded under the assumption that the patents were invalid. Paul Dep. 25:3-26:11. These actions indicate that GE knew the state of the patent when it received the ATI letters and chose to proceed in its business with Carpenter regardless of the letters' contents.[6]

The deception element of false advertising is closely related to the materiality component because deceptive statements must influence purchasing decisions to be actionable. See U.S. Healthcare 898 F.2d at 922. The facts indicate that GE and Aubert's purchasing decisions were not affected by ATI's letters. Therefore, any alleged deception was not material to the final decision of the purchasers. In mid-2005, GE

---

[6] Carpenter argues that the Lanham Act's scope is broad enough to include the allegations made against Carpenter in ATI's letters. Pl.'s Mem. Opp'n. Defs'. Mot. Summ. J. at 9 (the Lanham Act "embraces innuendo, indirect intimations, and ambiguous suggestions. . .") (quoting William H. Morris Co. v. Group W., Inc., 66 F.3d 233, 257-58 (9th Cir. 1995). Two suppliers manufactured and distributed ingots for use by GE—this fact leads to the conclusion that those who received ATI's letters knew it was referring to Carpenter. See Paul Dep. 35-37. The weight of the evidence, however, points to GE and Aubert not being deceived and continuing to purchase ingots from Carpenter. Paul Dep. 25:3-26:11.

insisted that Carpenter complete work on and ship potentially infringing ingots. Christiansen Dep. 43:3-15; ATI Appx. Ex. 47 (discussing an email sent by Jennifer Hartman of GE to Sunil Widge of Carpenter in June 2005 stating that "GE is aware a patent has been filed by another party. GE insists that Carpenter complete the work . . . and ship the product without delay."). Neither was any alleged deception to Aubert material. Before ATI's letters were sent in 2003, Carpenter had discussions with Aubert about whether Carpenter's ingots infringed ATI's '564 patent. Christiansen Dep. 32:16-33:11. After the '564 patent was issued, Carpenter offered indemnification to Aubert for any patent infringement claims that ATI would bring. Aubert continued to purchase potentially infringing ingots for at least two more years after these communications with Carpenter began. ATI Appx. Ex. 58. The evidence clearly indicates that Carpenter and Aubert were not deceived by ATI's letters.

### C.   Objective and Subjective Bad Faith

Under the sixth element, the plaintiff must show that the defendant acted in bad faith when it sent letters to plaintiffs or customers notifying them of potential patent infringement. The bad faith element must be established by the plaintiff when the Lanham Act claim is asserted against a patent holder for marketplace activity in support of its patent:

> This sixth element is necessary in order to avoid a conflict between the Lanham Act, which could deprive a patentee of the right to notify the public about the potential infringement of its patent, and the patent laws, which make marking or specific notice of patented articles a prerequisite to the recovery of damages.

9

Allen, 197 F. Supp. at 108. This element has two components—objective bad faith is a threshold requirement, and it is followed by subjective bad faith. Judkins v. HT Window Fashion Corp., 529 F.3d 1334, 1338 (Fed. Cir. 2008). To establish objective bad faith, Carpenter would need to show that ATI's representations in the letters were "objectively baseless" in that there was no reasonable argument that the patents were valid and enforceable. Id. This is for all practical purposes impossible, because ATI owned a valid patent. The subjective component of bad faith requires a showing that ATI knew its claims were baseless when it sent its letters. Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1354 (Fed. Cir. 1999) (observing bad faith would be found "if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent . . .").

Carpenter has not satisfied the objective bad faith requirement and thus has failed to meet the threshold requirement of the bad faith element. DCI Marketing v. Justrite, 213 F. Supp. 2d 971, 973-74 (E.D. Wis. 2002), provides an analysis on how a party's notice letter failed to satisfy the objective bad faith component based on facts similar to the instant controversy. The notice letter in DCI Marketing stated:

> It has come to our attention that Sharpe Safety Supply, Inc. is presently selling and/or distributing products manufactured by [the alleged infringer] including the [product at issue].
>
> We would like to take this opportunity to inform you that DCI Marketing, Inc. [patent holder] . . . is the owner of several patents and other intellectual

> property rights relating to . . . [the product at issue], including U.S. Patent No. 6,186,355. We have enclosed a copy of [the patent] for your information and review.
>
> Please be aware that [the alleged infringer] has been informed of various intellectual property rights of DCI Marketing, Inc. including [the patent]. . . .

Id. at 973. The court found that because DCI Marketing owned the patent mentioned in the letter, the challenged statement was accurate and thus falsity could not be show in order to satisfy objective bad faith. Id. at 974. Notably, the court in DCI Marketing considered what appeared to be subjective bad faith in DCI's motivations for sending the letter but concluded that "subjective factors cannot turn a document that is objectively accurate into bad faith." Id.

## IV. CONCLUSION

Carpenter has failed to raise an issue of material fact on at least three of the elements making up a false advertising claim under the Lanham Act. ATI's motion for summary judgment is granted.

An appropriate order follows.